## LANGLEY et al. v. GODWIN et al.
### (No. 7180.)

(Court of Civil Appeals of Texas. San Antonio. June 4, 1924. Rehearing Denied July 1, 1924.)

1. **Appeal and error** ⊙⇒1010(1)—**Appellate court cannot interfere with trial court's findings which sufficient evidence supports.**

Appellate court cannot interfere with trial court's findings which there is sufficient testimony to support.

2. **Principal and surety** ⊙⇒194(6½)—**Surety cannot obtain contribution without proof that he actually paid debt or judgment.**

In order for a surety or cosurety to obtain contribution, he must prove that he actually paid debt or judgment.

3. **Partnership** ⊙⇒242(5)—**Burden on retiring partner to prove payment of partnership debt in order to secure contribution from incoming partner.**

Where a retiring partner claimed contribution from an incoming partner for payment of a partnership debt, which incoming partner had in part agreed to assume, burden was on retiring partner to prove by a preponderance of evidence that he had paid portion of debt which incoming partner agreed to assume.

4. **Partnership** ⊙⇒238—**Retiring partner paying partnership debt held not entitled to contribution from incoming partner.**

Retiring partner was not entitled to contribution from incoming partner for payment of a partnership debt which incoming partner with remaining partner agreed to assume, where debt was paid by remaining partner by a conveyance of real estate of which reasonable market value was not shown, and retiring partner refunded to remaining partner one-half of debt so paid.

Error from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by W. G. Langley and others against Joe S. Godwin and others, in which the named defendant filed a cross-action. Judgment for defendants, and for plaintiffs on the cross-action, and plaintiffs bring error. Affirmed.

Locke & Locke and Paul M. O'Day, all of Dallas, for plaintiffs in error.

R. E. Rouer and Gillis A. Johnson, all of Fort Worth, for defendants in error.

COBBS, J. This suit was instituted by plaintiffs in error against defendants in error, to recover an alleged indebtedness due each of them by Joe S. Godwin, arising out of the sale of the partnership interest of W. G. Langley in the Franklin Motor Car Company of Fort Worth, Tex., to Joe S. Godwin, and the assumption by Godwin of Langley's share of the indebtedness then outstanding against the Franklin Motor Car Company. Included in this indebtedness was an obligation of the Franklin Motor Car Company to pay certain rents to M. L. Eppstein which the Franklin Motor Car Company was unable to pay on account of the fact of its subsequent failure.

Prior to the institution of the suit Joe S. Godwin conveyed without any consideration to his brother, William Gardner Godwin, a resident of the state of Colorado, all of its property, having a total valuation of $150,000, for the purpose of escaping the payment of his debts.

A bankruptcy proceeding was instituted by Langley against Godwin prior to that time, which resulted in the reconveyance to Joe S. Godwin, by William Gardner Godwin, of all of the property of said Joe S. Godwin. As a result of this, therefore, the relief prayed for in regard to the reconveyance became no longer necessary. Upon the trial of the case, Eppstein withdrew from the suit, which left only W. G. Langley and Joe S. Godwin, as parties to the suit.

Langley's claim against Godwin was based upon the fact that prior to December 8, 1920, W. G. Langley and H. A. Chamness, as partners, were engaged in the business of purchasing and selling Franklin automobiles and parts in the city of Fort Worth, Tex. On De-

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cember 8, 1920, Langley sold his interest in the partnership, with the consent of Chamness, to Joe S. Godwin. Part of the consideration was that Godwin and Chamness agreed to pay and discharge the outstanding indebtedness of the said Franklin Motor Car Company, which included three certain notes executed by Langley and Chamness on June 15, 1920, to Mrs. W. J. Rogers, two for $1,000 each, and the last for $750, due respectively 60, 90, and 120 days after date. After the maturity of the last note Mrs. Rogers called upon Godwin to pay the said notes, and Godwin refused to do so. Whereupon, Chamness and Langley, together, paid such said indebtedness, and Langley, in this suit, seeks to secure from Godwin the sum paid by him in satisfaction of these notes, to wit, $1,520.

Godwin filed a cross-action against W. G. Langley in which he claimed that he purchased one-half interest in the Franklin Motor Car Company of Fort Worth in reliance upon representations of Langley that a half interest in the company was worth $10,000; that said business was a going and solvent concern, owing current debts only in the amount of about $100; that a previous indebtedness of the Franklin Motor Car Company of Fort Worth to W. G. Langley personally had been extinguished from the day of the transfer of the partnership interest; that all of such representations were false and were known by Langley to be false, and were made by him for the purpose of inducing the said Joe S. Godwin to purchase the interest and to assume all of the said debts.

The transfer of the interest from Langley to Godwin was embodied in two separate instruments. Among other things, the instruments required the assumption by Chamness and Godwin of a note for $2,700. The evidence is undisputed that the $2,700 note referred to is the Rogers note, the payment of which is the subject of this suit. The only manner in which Chamness could secure any money to comply with his agreement was to sell his homestead, and, after some negotiation, it was agreed that Mr. Rogers should take in his equity from Mr. Chamness' homestead in partial satisfaction of the indebtedness. The equity in the homestead lacked $610.78 of being sufficient to satisfy the total amount of the indebtedness due on the Rogers notes. On the day the settlement was made Chamness executed a deed of his property to Rogers, and Langley drew his check in favor of H. A. Chamness for $610.78, which was immediately indorsed by Chamness and delivered to Mr. Rogers. This, however, did not involve an equal distribution of the settlement. One-half of the indebtedness at that time amounted to $1,521.05, and the value of Chamness' equity was figured at $2,400.31. Therefore, to make the payment of the indebtedness equal, Langley executed and delivered to Chamness his promissory note in

the sum of $910.27, which was subsequently paid.

Plaintiff in error admits that there is no error predicated on the finding that no fraud had been practiced, and that the only issue in this court is whether or not, upon the undisputed facts, the trial court erred in failing to render judgment for plaintiff in error W. G. Langley.

The case was tried by the court without a jury, and judgment rendered that Langley take nothing by his suit against Joe S. Godwin, and that Godwin take nothing by his suit against W. G. Langley.

The court made and filed the following findings of fact and conclusions of law:

### Findings of Fact.

"Prior to December 8, 1920, the plaintiff, W. G. Langley, together with H. A. Chamness, was engaged in a partnership business of buying and selling Franklin automobiles in the city of Fort Worth, Tex., called the Franklin Motor Car Company of Fort Worth.

"That on said December 8, 1920, the said W. G. Langley sold and transferred his interest in the said partnership to the defendant Joe S. Godwin, according to the terms of a certain written contract of that date by and between W. G. Langley, H. A. Chamness, and Joe S. Godwin, which reads as follows:

" 'State of Texas, County of Dallas.

" 'This instrument witnesseth the agreement of W. G. Langley, H. A. Chamness and Joe S. Godwin, as follows:

" '1. W. G. Langley hereby bargains, sells and delivers to Joe S. Godwin one-half interest of the said W. G. Langley in the partnership business and assets of the firm conducted at Fort Worth, Texas, under the name of Franklin Motor Car Company which heretofore has been composed of the said H. A. Chamness and the said W. G. Langley.

" '2. In consideration of such sale the said Joe S. Godwin pays to the said W. G. Langley simultaneously with the execution of this instrument the sum of $2,000, receipt of which is hereby acknowledged, the said Joe S. Godwin and the said H. A. Chamness agree to pay and discharge all indebtedness and all obligations of whatever nature of the firm of Franklin Motor Car Company at Fort Worth, Texas, including a note for $2,700 and another note for $2,000, details of which are known to all of the parties, and to hold the said Langley harmless from all of such indebtedness and obligations and all claims of such company.

" '3. Said Langley by separate agreement shall assign to the said Chamness and the said Godwin all of his rights under and by virtue of the lease now held by the said Franklin Motor Car Company at Fort Worth, Texas, from M. L. Eppstein.

" 'Dated this December 8, 1920.
" '[Signed]      W. G. Langley.
" 'H. A. Chamness.
" 'Joe S. Godwin.'

"That at said time there were outstanding three certain promissory notes which were owed by Langley and Chamness as partners in said business to Mrs. W. J. Rogers in a total sum of $2,750, all of which were on December

8, 1920, past due, and said three notes constituted the $2,700 note referred to in said written contract.

"That thereafter the said Franklin Motor Car Company of Fort Worth became and continued to be a partnership composed of H. A. Chamness and Joe S. Godwin and was such on October 13, 1921. That on said date, said notes being still unpaid, H. A. Chamness paid the said notes in full, and the said Mrs. W. J. Rogers accepted the said payment made as aforesaid by H. A. Chamness in full satisfaction of said notes. The court further finds that the plaintiff, W. G. Langley, did not pay off the said indebtedness due on the said Rogers notes or any part thereof. The value of the real estate which H. A. Chamness gave in satisfaction of said notes was not shown.

"Plaintiff brings this suit against Godwin alleging that he was compelled to and did pay off to Mrs. W. J. Rogers one-half of the amount of said notes, and that by reason of the written contract of December 8, 1920, defendant Godwin became indebted to him in the sum which he was compelled to pay the said Mrs. Rogers."

#### Conclusions of Law.

"I conclude that the law of the case is that from the time of the execution and delivery of the Rogers notes until the written contract on December 8, 1920, both H. A. Chamness and W. G. Langley owed the said notes jointly and severally and each as partners in the then existing Franklin Motor Car Company owed the whole amount of said notes to the said Mrs. Rogers. As between themselves, if either paid the whole, then the other was liable for contribution in a proper action.

"That by the express terms of the obligation of December 8, 1920, which was executed by H. A. Chamness as well as by Langley and Godwin, it is said Joe S. Godwin and H. A. Chamness each agreed with the said W. G. Langley, who was then retiring from the partnership, to pay all the indebtedness of the Franklin Motor Car Company, including the said Rogers notes.

"From said date as between Mrs. Rogers and Langley, Chamness, and Godwin, each of the three last-named individuals owed the whole amount of the debt as principals on the note. But as between Langley on the one hand and Chamness and Godwin on the other, Langley's relation became that of a surety, for by the very terms of the written contract of December 8, 1920, Chamness and Godwin had each promised Langley to pay off the whole of said debt.

"Thus, on October 13, 1921, H. A. Chamness owed the whole amount of said notes and paid that whole amount to Mrs. Rogers, and those notes became wholly satisfied, and any obligation of the said W. G. Langley to pay off said notes and indebtedness ceased instantaneously. Before the contract of December 8th, the original partnership existing, if H. A. Chamness had paid off the whole of said indebtedness he would have been entitled to contribution from W. G. Langley in a proper action for accounting and dissolution, but by the contract of December 8, 1920, Langley retired from the partnership, and Chamness, as well as the incoming partner, agreed to pay off all outstanding indebtedness, and, therefore, from that date any right on the part of H. A. Chamness to demand contribution from W. G. Langley ceased. If Chamness, who is not a party to this suit, became entitled to contribution on October 13, 1921, when he paid off the Rogers notes in full, it was from Goodwin, not Langley.

"I am of the further opinion that W. G. Langley was not legally bound under any contract pleaded to refund H. A. Chamness in any way for doing what he, H. A. Chamness, was legally bound to do under written contract of December 8; that is, to pay off the Rogers notes.

"That since Langley did not pay off the Rogers notes and was bound to refund Chamness for paying off said notes he is not entitled to recover anything by way of damages for breach of contract from the defendant, Joe S. Godwin."

This is practically a fact case, and the facts fully support the findings of the court. Therefore it will not be necessary, taking that view of it, to discuss the facts any further than has been found by the court.

The three propositions of plaintiff in error are: (a) That the provision of the contract of purchase that the purchaser Joe S. Godwin, as an incoming partner, should assume the obligation of the retiring partner to satisfy and pay off certain notes executed by the predecessor partnership, was valid and enforceable. (b) When the retiring partner, together with his former partner, paid off said notes, upon the refusal of the succeeding partner to do so, such retiring partner, to the extent of his participation in the payment, is entitled to be reimbursed by the purchaser of his interest. (c) The undisputed evidence shows that W. G. Langley did pay off a portion of the indebtedness on said notes.

The principal question for determination is, whether or not the trial court was plainly wrong in holding that plaintiff in error failed to prove by a preponderance of the evidence that he was legally obliged to pay and had paid to Mrs. Rogers $1,521.05 on the note in question. There was evidence supporting the finding of the trial court that H. A. Chamness, the continuing partner, paid off the note in full as he had contracted to do, and it is properly contended that there was no pleading or evidence showing the reasonable market value of the real estate at the time it was conveyed by Chamness to Mrs. Rogers in payment of the notes.

[1] We think there is sufficient testimony to support the findings of the trial court, and, that being true, we are prevented by the uniform authorities of the appellate courts of this state from interfering with those findings.

The evidence and findings of the court show that H. A. Chamness, who had become one of the principals under the contract of assumption, paid the Rogers note, and that Langley refunded to him one-half of the amount so paid. And the court found that, if Langley refunded to Chamness one-half of

the amount of the note, he was under no legal obligation to do so, and therefore could not recover in this action anything by way of damages for breach of contract from the defendant in error Joe S. Godwin.

The case may be regarded as one where the surety, as Langley was, was entitled to be reimbursed by one of his principals who had paid the debt, as he was legally obliged to do. Brazee v. Woods, 35 Tex. 302.

[2] In order for a surety or cosurety to obtain contribution he must prove that he actually paid the debt or judgment. Jackson v. Murray, 77 Tex. 644, 14 S. W. 235; 32 Cyc. 283.

[3, 4] The burden was on the plaintiff in error to establish by a preponderance of the evidence that in accordance with his pleadings he had actually paid $1,521.05 to Mrs. Rogers on the notes, but the trial court found that he did not do this, but that on the contrary H. A. Chamness, one of the parties to the contract of assumption, had paid it in full. Langley became the surety by the express terms of the contract, and Chamness and Godwin became the principals, on the notes, and Langley was not entitled under the facts to any contribution. Sanders v. Bush (Tex. Civ. App.) 39 S. W. 203; 30 Cyc. 612; 22 Cyc. 257, 258; 32 Cyc. 281.

If there was any right to demand contribution in this case, that right belonged to Chamness, and even he could not have recovered one-half of the face value of the Rogers notes from Godwin, even assuming that all the other equities between them had been already adjusted.

It will be observed in this case that there was no effort to dissolve the partnership and to have a partnership accounting, but the suit is practically one based upon the contract.

The evidence shows that the entire balance of the $3,042.10 note and interest was satisfied and paid off by a conveyance of real estate, excepting perhaps $610. There was no evidence to show the reasonable market value of the real estate, either at the time of payment or at any other time. In Price v. Horton, 4 Tex. Civ. App. 526, 23 S. W. 501, the rule is laid down that—

"If a surety discharges an obligation for a less sum than its full amount, he can only claim against the principal the sum so paid."

"A surety who makes a payment in property, as in land, or with a mortgage, may recover to the extent of the value thereof. * * * The value of the property is its market value at the time of payment. * * *" 32 Cyc. 273.

A surety is not allowed to speculate on his principal and collect more than the amount actually paid by him. Chamness in a proper action for accounting could not have recovered from the defendant in error in this case more than one-half of the reasonable market value of the real estate conveyed by him to Mrs. Rogers at the time of payment, and certainly plaintiff in error, who assumed the position of surety, conceding that he had owned the land and made the conveyance himself, will not stand in a better position.

We do not feel that we have the authority to disturb the findings of the court. We are not, however, inclined to do so, and we have assumed them to be correct in this case. We, therefore, approve the findings of the trial court, and the conclusions made by him.

There being no reversible error assigned, the judgment of the trial court is affirmed.