**NATIONAL BISCUIT CO. v. LAWRENCE.**

**No. 2316.**

Court of Civil Appeals of Texas. Waco.

May 29, 1941.

Rehearing Denied June 26, 1941.

Bryan & Maxwell and D. M. Wilson, all of Waco, for appellant.

George Clark, Tommy Lawrence and John B. Fisher, Jr., all of Waco, for appellee.

TIREY, Justice.

Plaintiff brought this suit to recover damages for injuries sustained by his wife in an automobile collision. The cause was tried before a jury and a verdict favorable to plaintiff was returned and judgment was rendered in favor of plaintiff for the sum of $1,500. Defendant has appealed.

Appellant's first proposition is: "Where the fact that the defendant carried liability insurance was improperly injected into the trial of this case, the court erred in failing to grant the defendant's motion for new trial." The error complained of requires a comprehensive statement. The physician used by plaintiff in treating his wife was placed on the witness stand by plaintiff. On cross-examination by defendant's counsel the following testimony was adduced: "Q. In a statement signed January 10th, didn't you make this statement,—January 10th of this year—'Since Mrs. Lawrence lives at Tyler, I told her to go home, get a supporting corset and stay in bed for a week.' Did you make that statement? A. Maybe I did. To whom? To an insurance adjuster? Defendant's Counsel: * * * I want to make a motion." The court retired the jury and defendant's motion to declare a mistrial was substantially (1) that the answer of the witness was voluntarily and intentionally made; (2) that it was not in response to the question asked; (3) that it injected into the trial the issue of insurance and led the jury to believe that the defendant was covered by insurance; and (4) that it was so prejudicial that it could not be removed from the minds of the jurors by any instruction by the court. Defendant, in support of that motion, asked the witness if he knew the man to whom the statement was made, and the witness replied that he "didn't know what his name was or who he was," but that he gave witness his name. At this point, witness asked for the privilege of making a statement, which was granted by the court: "That man came to my house one night and got me out of bed. He had a little old typewriter out there and I wrote him out a statement on a piece of yellow paper, like that notepaper there, and then he took his typewriter, and I told him I wanted a copy of that, and he copied

that statement. It was not any more like I gave it to him than if I had not dictated it, and what he put in there I don't know, but the copy I have is not anything like the original one that I gave him."

It appears from the bill of exceptions that plaintiff's counsel had no intimation that the insurance company's representative had furnished to counsel for defendant a signed statement of the witness; that he did know that witness had talked to some representative, but he had no knowledge or intimation that anything with reference to insurance was coming into the record; that defendant's counsel had had an insurance agent sitting in the courtroom since "yesterday" (not the man who took the statement), but there is nothing in the bill to indicate that the jury or the witness knew that such party was the agent of the insurance company. Defendant's counsel stated substantially that he did not know whether the man who took the statement was the agent for the company or not; that it was furnished to him through the mails by the company; that there was a representative of the company in the courtroom, but that he had conferred with him only once in the courtroom and that was back amongst the spectators in the courtroom. The court overruled defendant's motion to declare a mistrial, to which defendant excepted and moved the court to instruct the jury not to consider the remark in question and that it be stricken from the record. Defendant's counsel then stated: "I want to say this further in support of my original motion, that any instruction the court gives will only accentuate and increase the impression on the minds of the jury." Plaintiff's counsel then developed from the witness substantially that counsel for defendant had taken the statement inquired about from his files and was holding it in his hands, in the presence of the jury, interrogating the witness about the same, but had not exhibited the statement to the witness for examination at the time the question was asked; that the question witness asked defendant's counsel was for the purpose of determining who it was who came to his house at night and prepared a statement from the information which he gave, him and in which said party "didn't copy the dictation correctly"; that witness was trying to identify the statement which counsel was interrogating him about; that witness was not trying to inject into the case anything improper; that he did not know an insurance company was involved; that he did not know the identity of the defendant; that he had not talked with counsel for plaintiff until "this morning"; and that neither plaintiff nor his counsel had suggested that they wanted any mention made of insurance. Defendant's counsel offered in evidence, in support of his motion and bill, the statement of the witness, typed on yellow paper, which was signed by the witness and witnessed by Russell L. Dunn. The matter inquired about in defendant's question was a verbatim sentence taken from this statement. There was nothing in the statement to indicate that Russell L. Dunn was employed by the liability carrier, or that he had any connection with anyone. The record is silent as to whether witness saw Dunn or talked with him after he gave him the statement. The court granted defendant's motion that the answer of the witness be stricken from the record and instructed the jury as follows: "Gentlemen of the Jury, you are instructed that you will not consider for any purpose the following answer of Dr. Jones: 'Maybe I did. To whom? To an insurance adjuster?' and the same is ordered stricken from the record." After the court overruled defendant's motion for new trial, he approved the statement of facts and qualified defendant's motion for mistrial and its bill of exceptions thereto in the following manner: "The court certifies and finds in connection therewith that the witness' answer, 'Maybe I did. To whom? To an insurance adjuster?' was made inadvertently and without any intention on the part of the witness to do anything improper, and without knowledge that the same was improper. The court further certifies and finds as a qualification of said motion and bill of exceptions that the jury, after retiring to consider the verdict, deliberated for a period of one and one-half days; that there was no showing at any time during the trial, argument of counsel, deliberation of the jury, or hearing of the motion for new trial, that the jury gave any consideration to said inadvertent statement by Dr. Jones, or that the jury disregarded the court's positive instruction shown on page 164 of the statement of facts above not to consider such statement for any purpose. The court finds that under such circumstances, and in view of the amount of damages assessed by the jury, that the answer

of the witness complained of, did not have the effect of apprising the jury that the defendant was covered by indemnity insurance, and did not effect the verdict in this case."

The defendant excepted to such qualification.

■ It is obvious that the record presents a very serious question. It has given us some concern. We think it definitely appears from the record (1) that the plaintiff was in nowise responsible for the answer complained of being injected into the case; and (2) that the matter complained of was injected into the case by defendant's cross-examination, but that it was not invited. Was the answer intentionally made by the witness, and was the defendant prejudiced thereby? These questions present the real issues to be here decided. After carefully considering the record, we have concluded that the witness' answer was an effort on his part to identify the statement actually written by him and to distinguish it from the typewritten statement which Dunn had prepared in his presence, and which typewritten statement witness had signed, but which statement, he said, "was not anything like the original one that I gave him." The trial court is vested with discretionary power, and we think that he was in position, as an arbiter, to determine whether or not the witness was endeavoring to distinguish the statement prepared by him from the one typed by Dunn, and whether or not the witness had intentionally injected the issue of insurance into this case. We think that the record supports the qualification of the trial judge that the answer of the witness was not intentionally made.

■ Did such answer prejudice the jury against the defendant? We think not. The court instructed the jury not to consider for any purpose the answer of the witness. There is nothing in the record to indicate that the jury failed to obey the instructions of the trial court. The trial court certified that the jury deliberated on its verdict for one and one-half days, and that there was no showing that the jury gave any consideration to the inadvertent answer of the witness, or that the jury disregarded his instructions, and that, in view of the amount of damages assessed by the jury, the answer of the witness complained of did not have the effect of apprizing the jury that defendant was covered by indemnity insurance and did not affect the jury's verdict. We think the record sustains this view, and that the rule announced in D. & H. Truck Lines v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused is applicable to the case at bar. See, also, Russell v. Martin, 121 Tex. 488, 49 S.W.2d 699; Horton v. Benson, Tex.Civ. App., 266 S.W. 213, affirmed Tex.Com.App. 277 S.W. 1050; Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 373, writ dismissed; Texas Cities Gas Co. v. Ellis, Tex.Civ.App., 63 S.W.2d 717, points 10, 11 and 12, pages 722, 723; Allen & Co. v. Shook, Tex.Civ.App., 160 S.W. 1091 writ refused; Russell v. Bailey, Tex.Civ. App., 290 S.W. 1108 writ dismissed; Carter-Mullaly Transfer Co. v. Bustos, Tex. Civ.App., 187 S.W. 396, writ refused. In view of the foregoing discussion, we likewise hold that propositions Nos. 2 and 3 are without merit, and they are likewise overruled.

■ Proposition No. 4 is: "Under the evidence the verdict of the jury is excessive." Plaintiff alleged that the injuries sustained by his wife were substantially that the muscles and ligaments in the lumbar and sacroiliac regions of his wife's back were stretched and torn, and that she sustained a severe strain and sprain to said lumbar and sacroiliac regions; that she had suffered great physical pain and mental anguish; and that the injuries received had disturbed and affected her heart and kidneys, and that said injuries were permanent in nature, and that her ability to work and earn money had been permanently diminished. It would serve no useful purpose and would unnecessarily extend this opinion to discuss the evidence adduced upon the trial on the extent of the injuries, but we have considered this evidence very carefully and we are of the opinion that it is sufficient to support the verdict. Magnolia Petroleum Co. v. Dukes, Tex.Civ. App., 269 S.W. 819, writ refused; Flores v. Sullivan, Tex.Civ.App., 137 S.W.2d 799 writ dismissed correct judg.; 13 Tex.Jur. sec. 155, p. 270.

We have carefully considered all of the other propositions and assignments urged by appellant, and we are of the opinion that they do not present error.

The judgment of the trial court is affirmed.