POOL v. GILBERT et al.

No. 11671.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 29, 1947.

Rehearing Denied Feb. 26, 1947.

Bismark Pope and Hall & Hornberger, all of Laredo, for appellant.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, and Woodrow W. Curtis, of Pearsall, for appellees.

MURRAY, Justice.

This suit was instituted by Walter C. Pool, a Warrant Officer in the United States Army, against Joe L. Gilbert, who was the operator of a truck line between the City of Laredo and the City of San Antonio, Texas, seeking to recover damages sustained by him as the result of a collision between an automobile driven by plaintiff and a trailer-truck driven by one Garland B. Tennery as agent for Joe L. Gilbert. The collision was between the left side of the automobile and the left side

of the trailer of the truck. In other words, it was a side-swiping collision. Pool sustained injuries to his left elbow, which was evidently protruding from his car at the time of the collision. Woodrow W. Curtis, an attorney, was made a party to the suit, but all matters between him and plaintiff were settled by agreement and he will not be mentioned hereafter.

The case was submitted to a jury on special issues which were all answerᵤd favorably to defendant, Gilbert, and judg-ment was accordingly entered to the effect that plaintiff take nothing, from which judgment ·Walter C. Pool has prosecuted this appeal.

Appellant first contends that the findings of the jury to the effect that the driver of appellee's truck was not guilty of negli-gence in any of the particulars submitted to them was contrary to the evidence. We overrule this contention. The evidence shows that the collision occurred about two miles north of Dilley, on the main San Antonio—Laredo Highway, about 7:15 a. m., August 27, 1945. Appellant was headed north, while appellee's truck was headed south. He was driving his car in a northerly direction, going from Laredo to San Antonio, when he met a truck belong-ing to appellee; he passed this truck safely, but a very short distance behind this truck was another·truck, belonging to appellee, which, according to appellant's contention, pulled over to its left-hand side of the highway, in an apparent effort to pass the first truck, and when the driver of the second truck discovered appellant's car he pulled back to his right and applied his brakes, causing the rear end of the trailer to swing to the left and strike the left side of appellant's automobile and crush his elbow. After the collision, appellant's wife, who was with him at the time, drove the car to Pearsall, where he could receive medical aid and where the officers could be notified of the collision.

The Sheriff of LaSalle County received word of the collision and intercepted the truck at Cotulla, which was approximately the same distance south of the place of the collision as was Pearsall north of such place. The truck driver did not know there had been a collision, but went with Sheriff Wildenthal of Cotulla to examine his truck, and they found red paint on the back tires and a piece of flesh on the body of the truck, establishing beyond all doubt that the truck, owned by Joe L. Gilbert and operated by Garland B. Tennery, was the one which had collided with appellant's automobile.

Tennery testified that he had been driving at all times on his right-hand side of the highway, about 150 feet back of the lead truck operated by one Charles Lee Marshall, and also owned by Joe L. Gil-bert. Pictures of Pool's car were intro-duced in evidence, showing a rather slight dent or mashed place on the left-hand side of the left front fender, and no dent whatever in the left rear fender. From the nature of the injury to appellant's auto-mobile and arm, it is difficult to picture how the collision could have occurred in the manner appellant testified it did. To say the least, the jury were justified in concluding that the collision occurred with-out negligence on the part of Tennery, the driver of the truck. If Tennery's testi-mony was true, he committed no act of negligence near the place where the colli-sion occurred, although he did not realize there had been a collision. The jury had a right to believe Tennery's testimony, and the physical facts seemed to be more in his favor than in favor of appellant's version of the matter. El Paso Electric Co. v. Whitenack, Tex.Com.App., 1 S.W.2d 594; Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910.

Regardless, however, of all questions of original negligence, it seems inescapable that the jury were justified in finding that appellant was guilty of contributory neg-ligence in allowing his elbow to protrude through the window of his automobile while he was passing these two trucks. The contact between the automobile and the truck was slight, only causing a very small indentation in the side of the front fender, and no marks on the rear fender. It is thus clear that if appellant's elbow had not been protruding some distance out of the window of appellant's automobile he would have received no personal injury whatever.

Appellant next contends that "the argument of appellee's counsel, persisted in and reiterated over timely objections by appellant, and in disregard of the rulings of the court, to the effect that. 'any army pension that might be received by appellant upon retirement would constitute payment in full for the injuries received by him at the hands of appellee,' a stranger to such pension, thus arguing that such pension inured to appellee's benefit, was so harmful and prejudicial as to require a reversal."

Appellant alleged, in his First Amended Original Petition, as follows: "He alleges that such injuries are permanent and will remain with him throughout life, and that because thereof he will be discharged or retired from the service, in which he is now engaged, because of his inability to fully use his arm at such employment, and that by reason thereof his future earning capacity is lessened to not more than one-half of that which he could have earned in the future, or has been reduced to the extent of not less than $150 per month, or $1,800 per year."

Appellant testified that as a Warrant Officer in the United States Army he was receiving a salary of $172.50, together with $60 a month for quarter allowance and $42 a month for food, making a total of $274.50. It was also agreed that if he was disabled more than 30% he would be retired, in which event he would receive $129 per month as retirement pay. Counsel for appellant, in his opening argument, had argued to the jury that appellant's loss was the difference between his active pay and his retirement pay.

The record shows that while W. M. Lewright, Esq., one of the attorneys for appellee, was addressing the jury, the following occurred:

"Mr. Lewright (to the jury): I am going to show you in a minute, he is going to get some money regardless. Pool is going to get paid anyway for his arm, and why? I will say they proved—it by himself.

"Mr. Hall: We object to that. There is no evidence that Pool is going to get paid for the arm. Pool is going to be retired.

"The Court: Counsel, that is immaterial legally as to whether Mr. Gilbert is liable for damages.

"Mr. Lewright: Your Honor sustains the objection?

"The Court: The Court sustains the objection.

"Mr. Lewright: I will prove that under the testimony, that even though this man himself may have caused his own injury himself, the Army will retire him for the rest of his days and pay him $129.00 a month.

"The Court: The point Mr. Hall is objecting to, as I understand it, is whether he gets paid or not is immaterial. The material part in this case is whether, legally, Joe Gilbert is liable, and if so, the amount. Whether he gets paid or not, there is no issue.

"Mr. Lewright: Then, may it please the Court. Under the issue of damages, as to how much this man may be entitled to receive, the evidence is here, if he is injured as much as thirty per cent, and they claim he is, Uncle Sam will continue to pay him $129.00 a month for the balance of his days, which if his life expectancy is thirty years he will get fifty thousand dollars.

"Mr. Hall: We object to that. This man will get that because of his service to the Army and not because his arm is broken.

"The Court: The issue submitted to the jury is not on the amount of money he has received or will receive, but as to whether his capacity to earn money has been lessened.

"Mr. Lewright: We except to the Honor's remarks.

"Mr. Lewright: Gentlemen, on the question—he can get out and earn money. The evidence does not show here whether he is a right-handed man or a left-handed man, but gentlemen of the jury, he can do something, and while he is doing something, Uncle Sam is going to pay him $129.00 a month.

"Mr. Hall: We ask that the counsel be instructed not to continue this line of argument.

"The Court: I have twice instructed you, Mr. Lewright, I now overrule Mr. Hall's objection, and you have your exception."

This alleged improper argument was fully called to the attention of the trial court in a motion for new trial. The motion for new trial was overruled by the trial court. The order overruling such motion states, in effect, that but for the fact that the matter of retirement pay had been pleaded and proved and argued by counsel for appellant his ruling would have been otherwise.

■ We agree with the trial judge, that in view of the fact that retirement pay had been plead, proved and argued by appellant's counsel, the argument of appellee's counsel was not reversible error. Furthermore, this argument related to the measure of damages, or the amount to be awarded to appellant, and in view of the fact that the jury properly found that appellant was guilty of contributory negligence, the question of amount of recovery becomes immaterial.

Appellant next complains that counsel for appellee made the following arguments, to wit:

"Mr. Lewright (to the jury): Why, if he (Pool) is telling the truth we could not be here for Mr. Gilbert.

"Mr. Hall: We object to this line of argument. He is not here defending the suit just because of that testimony.

"The Court: Objection overruled.

"Mr. Hall: Note our exception.

"Mr. Lewright: Either Pool was on his wrong side or Tennery was on his wrong side, and I reiterate that if this case was as Pool is claiming that Tennery negligently and carelessly went over across and hit him or in some manner the front of that trailer hit him, or in some manner he was running along like that and Tennery suddenly hit him, this law suit would not be here, we would have paid Pool for his loss. * * *

"Mr. Lewright: Gentlemen, it is logical that I took that position. I told Gilbert, Joe, nobody is going to stick you.

"Mr. Pope. We object to that.

"The Court: Objection overruled.

"Mr. Lewright: I said, Joe, I would not pay him a thin dime. And, Gentlemen of the Jury, I don't intend to pay him a thin dime because it is not right. It is not just."

■ These arguments were not made consecutively, but are selected from different portions of the argument made by appellee's counsel. The first argument was a fair deduction from the evidence, as viewed by appellee's counsel and was proper. Allen v. Texas & N. O. R. Co., Tex.Civ. App., 70 S.W.2d 758; Corn v. Crosby County Cattle Co., Tex.Com.App., 25 S.W.2d 290; Russell v. Martin, 121 Tex. 488, 49 S.W.2d 699.

■ The remaining arguments were not properly objected to, that is, the objections did not point out any reason for them, and were properly overruled by the trial court.

The arguments are not so inflammatory or prejudicial as to require reversal in the absence of proper objections.

Appellant next contends that the following argument of appellee's counsel was reversible error, to wit: "You are not supposed to discuss whether Joe Gilbert is rich or poor; it is not a matter of whether Joe Gilbert has three trucks, like he says he has, or whether he is worth a million dollars. Therefore, I am not appealing to you here because Joe might be poor; I am appealing to you to decide the case on the facts, like man to man, just like you happened to be in Joe Gilbert's place, and if you do that, Joe Gilbert won't have anything to fear."

■ We overrule this contention, the argument was not objected to at the time it was made and was not of such harmful nature as to require a reversal of the judgment in the absence of a proper objection. Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

The judgment is affirmed.